ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
OCT - 2 2007
U.S. COURT OF FEDERAL CLAIMS

ALLEN CORPORATION OF AMERICA, INC.

Plaintiff,

v.

THE UNITED STATES,

Defendant.

No. 07-711 C

**MEMORANDUM IN SUPPORT OF ALLEN CORPORATION OF AMERICA, INC.'S MOTION FOR PRELIMINARY INJUNCTION**

Ronald K. Henry
KAYE SCHOLER LLP
901 Fifteenth Street, N.W.
Washington, D.C. 20005-2327
(202) 682-3500 telephone
(202) 682-3580 facsimile
rhenry@kayescholer.com

Date: October 2, 2007

*Attorney for Allen Corporation of America, Inc.*

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT .......... 1

STATEMENT OF THE FACTS .......... 2

A. The Solicitation .......... 2

B. The Evaluation and Award .......... 4

C. Procedural History .......... 4

ARGUMENT .......... 5

I. LEGAL STANDARDS GOVERNING PRELIMINARY INJUNCTIVE RELIEF .......... 5

II. ALLEN IS LIKELY TO PREVAIL ON THE MERITS OF ITS CLAIMS .......... 5

A. The Army's Evaluation Of Allen's Proposal Was Improper .......... 6

1. The Army's Evaluation of Allen's Technical Approach Was Arbitrary, Capricious, Inconsistent with the Terms of the RFP and Contrary to Law .......... 6

2. The Army's Evaluation of Allen's Management and Staffing Plan Was Arbitrary, Capricious, Inconsistent with the Terms of the RFP and Contrary to Law .......... 9

3. The Army's Evaluation of Allen's Past Performance Was Arbitrary, Capricious, Inconsistent with the Terms of the RFP and Contrary to Law .......... 10

B. The Army's Evaluation Of SNVC's Proposal Was Improper .......... 11

1. The Army's Evaluation of SNVC's Technical Approach Was Arbitrary, Capricious, Inconsistent with the Terms of the RFP and Contrary to Law .......... 11

2. The Army's Evaluation of SNVC's Management and Staffing Plan was Arbitrary, Capricious, Inconsistent with the Terms of the RFP and Contrary to Law .......... 12

3. The Army's Evaluation of SNVC's Past Performance was Arbitrary, Capricious, Inconsistent with the Terms of the RFP and Contrary to Law .......... 13

C. The Army Failed To Follow The RFP's Evaluation Criteria ........ 14

D. The Army Failed To Treat The Offerors Equally ........ 14

E. The Army Improperly Disclosed Allen's Proprietary Information ........ 15

III. ALLEN WILL SUFFER IRREPARABLE HARM IF PRELIMINARY INJUNCTIVE RELIEF IS DENIED ........ 16

IV. THE BALANCE OF HARDSHIPS WEIGH IN FAVOR OF GRANTING ALLEN'S MOTION FOR PRELIMINARY INJUNCTION ........ 18

A. The Government Will Suffer No Harm If The Court Enters A Preliminary Injunction ........ 19

B. The Potential Harm To SNVC If The Court Enters A Preliminary Injunction Is Minimal At Best ........ 20

V. PRELIMINARY INJUNCTIVE RELIEF IS IN THE PUBLIC INTEREST ........ 21

CONCLUSION ........ 22

# TABLE OF AUTHORITIES

## CASES

*Advanced Sys. Tech., Inc. v. United States*,
69 Fed. Cl. 474 (2006) .......... 5, 16, 19, 21

*Asia Pac. Airlines v. United States*,
68 Fed. Cl. 8 (2005) .......... 17

*Bannum, Inc. v. United States*,
404 F.3rd 1346 (Fed. Cir. 2005) .......... 8

*Chrysler Motors Corp. v. Auto Body Panels, Inc.*,
908 F.2d 951 (Fed. Cir. 1990) .......... 5

*FMC Corp. v. United States*,
3 F.3d 424 (Fed. Cir. 1993) .......... 5

*Great Lakes Dredge & Dock Co. v. United States*,
60 Fed. Cl. 350 (2004) .......... 19

*Heartland Acad. Cmty. Church v. Waddle*,
335 F.3d 684 (8th Cir. 2003) .......... 6

*Hospital Klean of Texas, Inc. v. United States*,
65 Fed.Cl. 618 (2005) .......... 18

*Isratex, Inc. v. United States*,
25 Cl. Ct. 223 (1992) .......... 21

*JWK Int'l Corp. v. United States*,
52 Fed. Cl. 650 (2002) .......... 6

*Labat-Anderson Inc. v. United States*,
50 Fed. Cl. 99 (2001) .......... 21

*Magellan Corp. v. United States*,
27 Fed. Cl. 446 (1993) .......... 5

*Mikohn Gaming Corp. v. Acres Gaming*,
165 F.3d 891 (Fed. Cir. 1998) .......... 5, 6

*OTI Am., Inc., v. United States*,
68 Fed. Cl. 646 (2005) .......... 17

*Overstreet Elec. Co. v.* United *States*,
47 Fed. Cl. 728 (2000) .......... 21

*PGBA, L.L.C. v. United States*,
57 Fed. Cl. 655 (2003) .......... 22

*Reilly's Wholesale Produce v. United States*,
73 Fed. Cl. 705 (2006) .......... 18, 21

*Seems Motors Inc. v. Ford Motor Co.*,
429 F.2d 1197 (2d Cir. 1970) .......... 17

*TLT Constr. Corp. v. United States*,
50 Fed. Cl. 212 (2001) .......... 14

*TRW Envtl. Safety Sys., Inc. v. United States*,
16 Cl. Ct. 520 (1989) .......... 18, 20

*Univ. Research Co., LLC v. United States*,
65 Fed. Cl. 500 (2005) .......... 5

## STATUTES

28 U.S.C. § 1491(b) .......... 5

31 U.S.C. § 3553 (c) .......... 4

31 U.S.C. § 3553 (d) .......... 4

5 U.S.C. § 706(2)(A) .......... 6

## RULES

Rule 65 of the Rules of the Court Federal Claims .......... 5

Plaintiff Allen Corporation of America, Inc. ("Allen"), by its attorneys, is moving pursuant to Rule 65(a) of the Rules of the United States Court of Federal Claims for a preliminary injunction enjoining Defendant, the United States of America (the "Government"), acting by and through the U.S. Department of the Army Contracting Agency - ITEC4 ("Army" or "Agency"), from permitting SNVC, Inc. ("SNVC") to begin or continue performance under a contract (the "Contract") awarded pursuant to Request for Proposal No. W91QUZ-06-R-0014 ("RFP" or "Solicitation").

## PRELIMINARY STATEMENT

Plaintiff Allen is seeking preliminary injunctive relief against the Defendant because the Army's award of the Contract was contrary to applicable procurement law and regulations. Specifically, the Army's evaluation of Allen's and SNVC's proposals was arbitrary, capricious, unreasonable and inconsistent with the terms of the RFP. The Army also failed to follow the RFP's evaluation criteria, failed to treat the offerors equally and improperly disclosed Allen's proprietary information to the other offerors, including SNVC.

Allen has no adequate remedy in law and will suffer irreparable injury if an injunction is not entered. If SNVC is permitted to begin performance of the Contract, Allen would be substantially prejudiced because it would be denied an opportunity to fairly compete for the award, would be required to demobilize (thus losing valued and knowledgeable employees that serviced the incumbent contract) and will suffer the loss of significant revenues and potential profits. By contrast, if the requested injunctive relief is granted, the Government will not suffer any harm because it will leave Allen in place to perform the services it has successfully performed to date. In addition, the Army has already stayed performance of the Contract for over 30 days without any harm to the Government. Similarly, any harm to SNVC would be minimal at best because it has

yet to begin performance. As demonstrated herein, Allen's likelihood to prevail on the merits, the irreparable injury that Allen will suffer, the balance of the hardships and the impact on the public interest all weigh heavily in favor of granting the preliminary injunction. Accordingly, Allen is entitled to injunctive relief to maintain the status quo until the merits of this case can be considered by the Court.

## STATEMENT OF THE FACTS

### A. The Solicitation

Allen is a small business that has provided logistics solutions and designed automated logistics systems for the Army for more than 30 years. *See* Affidavit of Henry F. Ludwig ("Ludwig Affidavit") ¶ 6 attached hereto as Exhibit 1. Since 1978, Allen has been providing worldwide functional support for the Standard Army Management Information Systems (STAMIS) Legacy Systems. Allen was successful in performing as the incumbent contractor for the Project Management Logistics Information Systems (PMLIS) with Post Deployment Software Support (PDSS) at Fort Lee, Virginia ("Ft. Lee").

On June 30, 2006, the Army issued Request for Proposals No. W91QUZ-06-R-0014. The RFP sought to continue existing PM LIS PDSS services at Ft. Lee. Section M of the RFP states that the award will be based upon best value and made to the offeror whose proposal conforms to the solicitation and is most advantageous to the Government, price and other factors considered. As part of its evaluation criteria, the RFP provides the following four factors (listed in descending order of importance):

1. Technical Approach
2. Management and Staffing Plan
3. Past Performance
4. Price

The RFP requires the Army to evaluate an offeror's Technical Approach according to its understanding of the objectives in the Performance Work Statement (PWS), the PM LIS PDSS, the resolution of problems associated with meeting those requirements and the likely success of its approach in providing the following tasks:

(1) functional analysis, design, development, and software maintenance and testing in accordance with government policies and procedures,

(2) the design, development, and delivery of training materials to support software/hardware changes associated with logistics systems,

(3) the development and maintenance of functional and technical documentation and end user manuals and tutorials,

(4) onsite customer support assistance and functional telephonic assistance,

(5) the development and planning of fielding strategies, performance of site surveys, data conversion and cleansing, and installation and operation of new equipment of the logistics systems being fielded

(6) a plan for transition from the previous GSA order to the new contract

Under the Management and Staffing Plan factor, the RFP provides that "the offeror's proposed personnel will be evaluated in terms of their relevant experience, qualifications, education, availability, and extent of commitment to performance of the Contract." In addition, the RFP states that the Government will evaluate the proposed mix of labor skill categories and the quantity of proposed labor hours to determine the offeror's understanding of the RFP's requirements. For the Past Performance factor, the RFP requires the Army to evaluate each offeror's Past Performance as it relates to the solicitation's requirements and objectives. The RFP provides that these "non-price evaluation factors, when combined, are Significantly More Important than the Price Factor."

**B. The Evaluation and Award**

On August 14, 2007, Allen submitted a timely proposal in response to the RFP. By letter dated August 22, 2007, the Army advised Allen that the award had been made to SNVC. On August 27, 2007, the Army debriefed Allen. At the debriefing, the Army claimed that SNVC "is superior to Allen in the Technical Approach factor" and "has a lower price."

Although the RFP did not provide a value rating scale in its debriefing the Army used "Outstanding," "Good" and "Fair" for rating the Technical Approach and Management factors. The Army also used "Very Low Performance Risk," "Minor Performance Risk," "Moderate Performance Risk" and "Unknown Risk" for rating the Past Performance factor. In the debriefing, the Army asserted that Allen's and SNVC's proposals should have the same Management and Staffing Plan rating of "Fair" and the same Past Performance rating of "Very Low Performance Risk." The Army further asserted that SNVC's Technical Approach should be rated as "Outstanding," but that Allen's Technical Approach should be rated as "Good." The Army's sole basis for rating Allen's Technical Approach as "Good" rather than "Outstanding" was a purported weakness in Allen's approach to the DOD Information Assurance Certification and Accreditation Program ("DIACAP").

**C. Procedural History**

Allen timely filed its bid protest with the U.S. Government Accountability Office ("GAO") on August 31, 2007 (B-310153). In accordance with 31 U.S.C. § 3553 (c), (d), the Army immediately suspended contract performance. The Army then filed a partial motion to dismiss certain allegations in the protest. The GAO granted in part and denied in part the Army's partial motion to dismiss. Thereafter, Allen voluntarily dismissed its GAO protest. Although a protective

order was entered in the protest, neither the GAO nor the Agency disclosed any protected material. The GAO has closed that matter, and Allen subsequently instituted this action.

## ARGUMENT

### I. LEGAL STANDARDS GOVERNING PRELIMINARY INJUNCTIVE RELIEF

The Court has authority to issue a preliminary injunction in a bid protest action under 28 U.S.C. § 1491(b) and Rule 65 of the Rules of the Court Federal Claims. *See Univ. Research Co., LLC v. United States*, 65 Fed. Cl. 500, 504 (2005). In deciding whether to enter a preliminary injunction, the Court considers four factors: (1) the threat of irreparable injury to the moving party; (2) the balance between this harm and the injury (if any) that granting the injunction might inflict on the government or third parties; (3) the probability that the moving party will succeed on the merits; and (4) the public interest. *See, e.g., FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993). None of these individual factors is determinative standing alone, and, in fact, "the weakness of the showing regarding one factor may be overborne by the strength of others." *Chrysler Motors Corp. v. Auto Body Panels, Inc.*, 908 F.2d 951, 953 (Fed. Cir. 1990). As in this case, the burden for seeking a preliminary injunction is lessened when the moving party seeks to preserve the status quo. *See Mikohn Gaming Corp. v. Acres Gaming*, 165 F.3d 891, 895 (Fed. Cir. 1998).

### II. ALLEN IS LIKELY TO PREVAIL ON THE MERITS OF ITS CLAIMS

"In considering whether to grant interim injunctive relief pending a final decision on the merits, this Court has recognized that likelihood of success is a flexible factor." *Advanced Sys. Tech., Inc. v. United States*, 69 Fed. Cl. 474, 483 (2006); *see also Magellan Corp. v. United States*, 27 Fed. Cl. 446, 447 (1993) (finding that "it is not fatal to [plaintiff's] effort to obtain interim

relief, for example, that it cannot demonstrate a 'significant' or 'strong' likelihood of success"). Indeed, the moving party is "not required to prove a mathematical (greater than fifty percent) probability of success on the merits." *Heartland Acad. Cmty. Church v. Waddle*, 335 F.3d 684, 690 (8th Cir. 2003).

In accordance with the Administrative Procedure Act, the Court is required to set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Here, the Army conducted an improper evaluation that was inconsistent with the terms of the RFP and contrary to law. In the absence of these prejudicial errors, the Contract would have been awarded to Allen as the offeror representing the best value to the Government. Because both the balance of hardships and the public interest weigh in Allen's favor, a preliminary injunction should be granted as long as Allen has "a fair chance" of prevailing on the merits. *Mikohn Gaming Corp.*, 165 F.3d at 898.

## A. The Army's Evaluation Of Allen's Proposal Was Improper

### 1. The Army's Evaluation of Allen's Technical Approach Was Arbitrary, Capricious, Inconsistent with the Terms of the RFP and Contrary to Law

The Army committed numerous errors during its evaluation of Allen's Technical Approach, including that Allen should have received a rating of "Outstanding." The Army acted arbitrarily and capriciously because its evaluation of Allen's Technical Approach was unreasonable and inconsistent with the stated evaluation criteria and applicable procurement statutes and regulations. *See JWK Int'l Corp. v. United States*, 52 Fed. Cl. 650, 659 (2002).

The Army undervalued and failed to give credit for several strengths in its evaluation of Allen's Technical Approach. As the incumbent contractor, Allen has distinctive knowledge and a detailed understanding of the existing systems and processes. Specifically, Allen has the technical

skills and experience in managing the systems as they evolve, maintaining benchmark test files to evaluate the systems and implementing fixes or workarounds. Allen's unique skill set is critical to performing all of the required tasks, including Task 1 (Software Sustainment and Support) and Task 2 (Software Testing). Thus, the Army failed to give proper credit for these strengths in Allen's proposal.

The Army also failed to properly evaluate Allen's Technical Approach with respect to fielding strategies and site surveys. As stated in its proposal, Allen plans to develop and execute fielding strategies that it has honed by successfully providing PM LIS fielding plans to the Government for over 30 years. In addition, Allen's familiarity with the processes and on-site personnel provides an added value that is a significant strength in performing Task 6 (Fielding Support). Similarly, the Army failed to consider the benefits of having the incumbent contractor develop and implement a plan for transition. Not only can Allen execute a risk-free, seamless transition, but also it has the technical training and security access that provide for a cost effective transition. Allen's transition plan is a significant strength that should have been included in the Army's evaluation of Allen's Technical Approach.

Moreover, the Army undervalued Allen's rating in several task categories. With respect to Task 5 (Customer Assistance), the Army evaluated Allen's strengths as moderate when they clearly are "significant." The Army's evaluation was also defective in rating Allen's training and training support as a minor strength. In its Debriefing Document, the Army only refers to pages 14-18 in evaluating Allen's proposal for Task 3 (Training and Training Support). But these pages do not include Allen's training proposal for other tasks such as fielding support and customer assistance. The Army's failure to fully evaluate Allen's training approach demonstrates that Allen's strengths should have been rated as significant. The Army also undervalued Allen's

strengths in providing functional and technical documentation. For example, the Army failed to fully evaluate Allen's proposal regarding documentation. In fact, the Army again overlooked several sections in the proposal where documentation was embedded into other tasks. Allen's comprehensive discussion of its approach to develop and provide documentation demonstrates its understanding and awareness of the complexities and challenges with these tasks. Based on Allen's unique understanding of the STAMIS lifecycle and task structure, the Army's review of the proposal, in its entirety, would have resulted in the documentation task being a significant strength rather than a minor one. Consequently, the Army's failure to evaluate and give credit to all of these "significant" strengths greatly prejudiced Allen's technical approach evaluation.

The Army asserted only one weakness in its evaluation of Allen's Technical Approach. In its Debriefing Document, the Army describes Allen's approach to the DOD Information Assurance Certification and Accreditation Program (DIACAP) as reactive. But the RFP does not provide that this discussion is required, or that addressing interim guidance (such as DIACAP) will be considered a weakness, or disadvantageous. In fact, Allen's discussion of this program demonstrates its forward-thinking and proactive approach in addressing a potential requirement. As a result, the Army should have scored Allen's approach to the DIACAP as a strength. Thus, this one minor weakness was improperly applied to the evaluation, and, as discussed above, Allen's Technical Approach warrants a rating of "Outstanding."

Because the Technical Approach is the first and most heavily weighted evaluation factor, Allen has clearly demonstrated "there was a 'substantial chance' it would have received the contract award but for the [Army's] errors in the bid process." *Bannum, Inc. v. United States*, 404 F.3rd 1346, 1358 (Fed. Cir. 2005). As such, Allen suffered substantial prejudice when the Army improperly evaluated its Technical Approach.

### 2. The Army's Evaluation of Allen's Management and Staffing Plan Was Arbitrary, Capricious, Inconsistent with the Terms of the RFP and Contrary to Law

The Management and Staffing Plan is the second most important factor in the evaluation. Under this factor, the RFP requires the Army to evaluate Allen's proposal in terms of its personnel's relevant experience, qualifications, education, availability, and extent of commitment to performance of the contract.

The Army improperly evaluated this aspect of Allen's proposal because Allen's Management and Staffing Plan should have been evaluated as "Outstanding" and as the highest ranked of all offerors' proposals. In fact, Allen has already successfully performed the tasks required under the RFP. As exemplified by the Army's rating of Allen's Past Performance as having "Very Low Performance Risk," Allen's management and staff are highly trained, proficient and extremely knowledgeable in the various tasks required under the RFP. As a result, Allen's strengths should have been rated as significant.

The Army also failed to conduct a proper realism analysis because the Army failed to consider Allen's knowledge and experience as the incumbent contractor. The RFP states that the Government will evaluate the proposed mix of labor skill categories and the quantity of proposed labor hours to determine the offeror's understanding of the RFP's requirements. Allen's prior experience on the PDSS bridge contract provides a low risk and cost effective solution to the Army. Notably, Allen's knowledge and skills in performing the RFP requirements explains why its Management and Staffing Plan requires fewer total labor hours than the Army's estimate. In determining the reasonableness of Allen's labor hours estimate, the Army did not properly take into account the efficiencies Allen has developed from having fully trained personnel and having already performed the RFP's requirements for several years. These efficiencies would result in a

significant decrease in labor hours if the contract was awarded to Allen. Thus, Allen's proposed labor hours are sufficient to ensure successful performance of the work in accordance with the RFP's requirements.

If the Army had conducted a proper realism analysis of Allen's proposal, it would have determined that Allen's low risk and cost effective approach sufficiently satisfies the RFP's requirements in light of its labor hours being less than the Army's estimate. Accordingly, the Army's evaluation of Allen's Management and Staffing Plan was arbitrary, capricious, unreasonable, inconsistent with the terms of the RFP and contrary to law.

### 3. The Army's Evaluation of Allen's Past Performance Was Arbitrary, Capricious, Inconsistent with the Terms of the RFP and Contrary to Law

The RFP requires the Army to evaluate each offeror's Past Performance as it relates to the Solicitation's requirements and objectives. Allen's Past Performance should have been evaluated as the highest ranked of all the offerors' proposals. Neither SNVC nor any of the other offerors have as much directly relevant experience as Allen - the incumbent contractor. The Army rated Allen's Past Performance as having "Very Low Performance Risk" because Allen's management and staff are highly trained, proficient and extremely knowledgeable in the various tasks required under the RFP. However, SNVC received the same score as Allen although Allen's Past Performance is superior to SNVC's. Had the Army conducted a proper evaluation, Allen would have received a higher score than SNVC under the Past Performance factor. *See infra* Part II.B.3. Thus, the Army's evaluation of Allen's Past Performance was arbitrary, capricious, unreasonable, inconsistent with the terms of the RFP and contrary to law.

### B. The Army's Evaluation Of SNVC's Proposal Was Improper

#### 1. The Army's Evaluation of SNVC's Technical Approach Was Arbitrary, Capricious, Inconsistent with the Terms of the RFP and Contrary to Law

There were also a number of errors in the Army's evaluation of SNVC's Technical Approach. These deficiencies in the Army's evaluation resulted in the Army improperly scoring SNVC's Technical Approach as "Outstanding."

With over 30 years of relevant experience, Allen knows the superiority of its own technical approach to the particular requirements of the RFP. Allen's skills and experience in directly relevant areas, such as managing the systems as they evolve, maintaining benchmark test files to evaluate the systems and implementing fixes or workarounds, are critical to performing the tasks required in the RFP. SNVC, however, does not possess these technical elements because it has never performed this work, nor any work that presented the type of complexities which would have required the development of such solutions.

In addition to overvaluing SNVC's Technical Approach, the Army failed to assess several weaknesses. As the incumbent contractor, Allen has no material transitioning to do, as it was already on site and in place. By contrast, SNVC has to develop and implement a plan for replacing Allen and its personnel and resources. SNVC's plan of transition is a large and high-risk effort that should have been evaluated as a significant weakness in its Technical Approach. SNVC was also not proactive in discussing its approach to DIACAP. If the Army had properly applied these and other weaknesses, SNVC's Technical Approach would not have received an "Outstanding" score.

Under the evaluation criteria, SNVC's Technical Approach was inferior to that reflected in Allen's proposal, and therefore SNVC's Technical Approach should have been ranked lower than

Allen's Technical Approach. As such, the Army's evaluation of SNVC's Technical Approach was arbitrary, capricious, unreasonable, inconsistent with the terms of the RFP and contrary to law.

**2. The Army's Evaluation of SNVC's Management and Staffing Plan was Arbitrary, Capricious, Inconsistent with the Terms of the RFP and Contrary to Law**

The RFP requires that the Army evaluate SNVC's Management and Staffing Plan in terms of SNVC's relevant experience, qualifications, education, availability, and extent of commitment to performance of the Contract. SNVC's Management and Staffing Plan should have been ranked lower than Allen's proposal. In fact, SNVC does not have the practical experience to support multiple STAMIS systems. SNVC's management and staff also has no prior involvement with Ft. Lee or its personnel. As a result, SNVC will be unable to meet the demands of the fast-paced, volatile environment described in the RFP.

With respect to the Army's realism analysis, because SNVC's Management and Staffing Plan received the same score of "Fair," as Allen's, presumably SNVC's labor hours estimate was also less than the IGCE estimate. SNVC, however, does not have the practical experience or efficiencies that Allen has developed as the incumbent contractor. Therefore, SNVC's proposed labor hours were not sufficient to successfully perform the required work.

As demonstrated above, the Army failed to distinguish between the Management and Staffing Plans proposed by Allen and SNVC. Had the Army properly scored the Management and Staffing Plan factor in accordance with the evaluation criteria, the Army would have identified several weaknesses in SNVC's Management and Staffing Plan and rated it lower than Allen's. Accordingly, the Army's evaluation of SNVC's Management and Staffing Plan was arbitrary, capricious, unreasonable, inconsistent with the terms of the RFP and contrary to law.

**3. The Army's Evaluation of SNVC's Past Performance was Arbitrary, Capricious, Inconsistent with the Terms of the RFP and Contrary to Law**

The Army also erred in assessing SNVC's Past Performance. SNVC's proposal should not have received a score of "Very Low Performance Risk" under the Past Performance factor.

The RFP requires that the Army focus its assessment of an offeror's past performance as it relates to the solicitation's requirements and objectives. As part of this assessment, the Army must determine the probability that the offeror will successfully accomplish the required effort. Here, SNVC has no prior involvement with Ft. Lee or its personnel. More significantly, SNVC does not have comparable practical experience in retail logistics systems or in supporting a system throughout its entire life cycle. Despite this substantial disparity in Past Performance, the Army improperly deflated Allen's Past Performance score and inflated SNVC's such that both offerors were awarded the same Past Performance score of "Very Low Performance Risk."

Allen's proposal received a "Very Low Performance Risk" score based upon its specific experience in performing the contract requirements in the RFP. This evaluated strength in Allen's Past Performance, however, did not translate into a score advantage because the Army gave SNVC the same high score. Because the Army did not have a reasonable basis to determine that Allen's and SNVC's Past Performance were equal, it improperly applied their scores under this evaluation factor. Specifically, SNVC received the same "Very Low Performance Risk" rating as Allen for Past Performance, even though it cannot demonstrate sufficient experience, as required by the RFP. Furthermore, Allen's Past Performance should have been considered superior to SNVC's given its experience, skills and training in providing PDSS requirements to the Government. The Army simply failed to make these qualitative distinctions between the competing proposals under the Past Performance factor. As a result, the Army acted arbitrarily and capriciously in evaluating

SNVC's Past Performance because there is no reasonable basis for the score that SNVC received vis-a-vis Allen's Past Performance score.

### C. The Army Failed To Follow The RFP's Evaluation Criteria

Under the RFP's evaluation criteria, Allen's proposal should have been ranked higher than all of the other offerors. The Army is required to look for differences in the offerors' proposals and give higher scores to those proposals that are superior in meeting the RFP's requirements. The Army failed to give Allen sufficient credit for its superior proposal. The Army also failed to downgrade SNVC for the weaknesses in its Technical Approach, Management and Staffing Plan and Past Performance. By failing to follow the RFP's evaluation criteria, the Army violated its obligations to the offerors. The Army's failure to follow the evaluation criteria was arbitrary, capricious, inconsistent with the terms of the RFP and contrary to law.

### D. The Army Failed To Treat The Offerors Equally

The differences in treatment of Allen and SNVC demonstrate that the Army treated offerors disparately. In comparing the two proposals, it is clear that the Army's evaluation was erroneous because Allen's proposal should have received a higher score than all of the other offerors under each evaluation factor.

It is a fundamental principle of Government procurement law that competition must be conducted on an equal basis, that is, offerors must be treated equally and be provided with a common basis for the preparation of their proposals. *See TLT Constr. Corp. v. United States*, 50 Fed. Cl. 212, 216 (2001). The Army has evaded this fairness requirement by failing to recognize the superiority of Allen's proposal as compared to the other offerors' proposals and imposing requirements on Allen that were not imposed on the other offerors.

The Army improperly downgraded Allen's proposal for "minor" weaknesses, while it did not penalize SNVC for major weaknesses and deficiencies in its proposal. The Army also failed to recognize the qualitative distinctions in Allen's and SNVC's proposals. The Army failed to apply the technical evaluation criteria equally, giving scores that were too high to SNVC and scores that were too low to Allen. The Army failed to discharge its duty to apply the same evaluation standard to all offerors. The Army has also refused to clarify why Allen's Technical Approach was rated as "Good" as compared to SNVC's "Outstanding" score although Allen is the incumbent contractor with extensive experience in PM LIS PDSS tasks, and SNVC's experience with similar projects is, at best, comparatively quite limited.

Furthermore, the Army imposed requirements on Allen that were not imposed on the other offerors. These additional requirements adversely affected Allen by raising its proposed price without a similar effect on the other offerors' price. Allen has been directly harmed by the Army's unequal treatment of offerors. Had the Army treated the offerors in an equal manner, it would have awarded the contract to Allen. The Army's failure to treat the offerors equally was arbitrary, capricious, unreasonable, inconsistent with the terms of the RFP and contrary to law.

### E. The Army Improperly Disclosed Allen's Proprietary Information

The Army's improper disclosure of Allen's proprietary information resulted in Allen receiving a lower score for its Technical Approach and further demonstrates that the Army failed to treat the offerors equally. During the early stages of the procurement, Allen expressed to the Army that various aspects of the current contract, including but not limited to Allen's Technical Approach, quality control plan, description and distribution of labor categories and cost and pricing data were proprietary information. Despite the fact that Allen did not authorize the Army to release its proprietary information, the Army never agreed to redact or withhold such

information from Allen's competitors. At the debriefing it became apparent that Allen's proprietary information had been improperly disclosed to the other offerors, including SNVC.

The other offerors' possession of Allen's proprietary information concerning several of the RFP's stated evaluation factors (including the Technical Approach) created an unfair competitive advantage. Specifically, the Technical Approaches of the other offerors, including that of SNVC, were evaluated higher than they would have been absent the Army's improper disclosure. Moreover, the Army's improper disclosure caused the evaluators not to view Allen's proposal as unique because the other offerors were able to copy identical or similar Technical Approaches into their proposals. As a result, the Army improperly undervalued Allen's Technical Approach. Consequently, the Army's improper disclosure of Allen's proprietary information was inconsistent with the terms of the RFP and contrary to law.

## III. ALLEN WILL SUFFER IRREPARABLE HARM IF PRELIMINARY INJUNCTIVE RELIEF IS DENIED

Allen will suffer irreparable injury if injunctive relief is denied because (1) it would have been denied the opportunity to fairly compete for the award; (2) it will be forced to layoff and potentially lose a very experienced and skilled workforce; (3) it will lose the profits from the contract; (4) its cost structure will be seriously affected, which will create a competitive disadvantage in seeking other contracts; and (5) it will lose the ability to utilize this Contract for training and marketing of the services Allen provides the Government. Allen does not have an adequate remedy at law and therefore preliminary injunctive relief is appropriate.

The Court should grant preliminary injunctive relief in order to preserve the status quo. *See Advanced Sys. Tech., Inc.*, 69 Fed. Cl. 474, 475 (2006) (granting plaintiff's motion for preliminary injunction in order to preserve the status quo until the court has ruled on the merits). Because Allen has provided PDSS services to the Army for over 30 years, it faces substantial harm

and prejudice if the Army is not enjoined from permitting SNVC to perform under the Contract. *See Asia Pac. Airlines v. United States*, 68 Fed. Cl. 8, 17 (2005). This harm is irreparable and cannot be fully compensated through the award of monetary damages. *See Seems Motors Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2d Cir. 1970) (affirming a temporary injunction where the balance of hardships weighed in the plaintiff's favor and the plaintiff's right to continue a business that it had engaged for twenty years was "not measurable entirely in monetary terms").

Allen will still suffer irreparable injury if an award was subsequently directed by the Court because it will be forced to layoff approximately 40 employees. *See* Exhibit 1, Ludwig Affidavit ¶ 6. The workers that Allen would lose are specially trained to work on the PDSS contract at Ft. Lee and the majority of them have over eighteen years of experience in providing the services that are the subject of the Solicitation. *Id.* at ¶ 7. This extensive, unique experience would be quite difficult and expensive for Allen to replace. *Id.* at ¶ 7. If the injunction is not granted but Allen is later awarded the contract, Allen would incur additional costs and expend significant effort to re-hire these people, if they were available at that time. *Id.* at ¶ 8. If the current employees were not available, it would take an extended period of time before Allen was able to provide the level of performance it has been providing to the Army under the Contract. *Id.* at ¶ 8. As a result, any demobilization will cause a significant loss in intellectual capital and will be disruptive to Allen's business. *Id.* at ¶ 7.

Moreover, Allen will suffer irreparable injury because the Army's improper evaluation will cause it to lose profits from the contract. *See OTI Am., Inc., v. United States*, 68 Fed. Cl. 646, 659 (2005) (finding that "a loss of potential profits stemming from a lost opportunity to compete is sufficient to constitute irreparable harm"). Notably, "a plaintiff moving for preliminary injunction need only allege, in order to establish irreparable injury, that by failing to enjoin, it will not be

awarded the contract and will lose profits thereunder." *TRW Envtl. Safety Sys., Inc. v. United States*, 16 Cl. Ct. 520, 529 (1989); *see also Hospital Klean of Texas, Inc. v. United States*, 65 Fed.Cl. 618, 624 (2005) (finding that "loss of profit, stemming from a lost opportunity to compete for a contract on a level playing field has been found sufficient to constitute irreparable harm"). In addition to the loss of profits, denying the injunction will have a very significant detrimental effect on Allen's indirect rates and cost structure, which will cause Allen to suffer a competitive disadvantage in its efforts to obtain other contracts. *See* Exhibit 1, Ludwig Affidavit ¶ 11.

Failure to grant the injunction would further irreparably harm Allen by denying it the ability to use its work on the Contract to demonstrate its skills and experience to prospective customers and to train new employees and subcontractors that Allen intends to have work on similar projects. *Id.* at ¶ 9. This type of loss is not readily subject to compensation by monetary damages, but would have a far-reaching effect on Allen's future business.

Allen will suffer irreparable harm unless the Court enjoins performance of the Contract. As such, Allen respectfully requests preliminary injunctive relief in order to keep the status quo and ensure that an ultimate remedy is available.

## IV. THE BALANCE OF HARDSHIPS WEIGH IN FAVOR OF GRANTING ALLEN'S MOTION FOR PRELIMINARY INJUNCTION

Regarding the balance of hardships factor, the Court must consider whether the significant and irreparable injury that Allen will suffer, *see supra* Part III, outweighs the harm to the Government and SNVC. *See Reilly's Wholesale Produce v. United States*, 73 Fed. Cl. 705, 715-16 (2006) (finding that the balance of hardships tilted in plaintiff's favor when the contracted services would not be interrupted and the defendant-intervenor would not be significantly harmed

by a preliminary injunction). Here, a preliminary injunction will not cause any appreciable harm to the Government or SNVC. Therefore, the balance of hardships weigh heavily in Allen's favor.

### A. The Government Will Suffer No Harm If The Court Enters A Preliminary Injunction

The Government will not suffer any harm from a preliminary injunction in this case. First, performance of the contract has been stayed since August 31, 2007, when Allen protested the Army's award decision. At that time, the Army made no attempt to override this stay for urgent and compelling reasons nor did it argue that it would be in the best interest of the Government to continue with the award to SNVC. For over thirty (30) days, the Army has stayed performance with there being no harm to the Government. *See* Exhibit 1, Ludwig Affidavit ¶ 14. A continued suspension of performance until this matter is resolved will likely cause no harm to the Government. Second, Allen is ready, willing, and able to continue operations during the period in which a preliminary injunction applies. *Id.* at ¶ 15. Allen's willingness to perform is dispositive because the Government cannot claim that it will be harmed if it continues receiving comparable service during the pendency of an injunction. *See, e.g., Advanced Sys. Tech., Inc.*, 69 Fed. Cl. at 486 (finding that the balance of hardship weighed in the plaintiff's favor because the Government "can continue to acquire the services uninterrupted" while the Court determines the merits of the case); *Great Lakes Dredge & Dock Co. v. United States*, 60 Fed. Cl. 350, 370 (2004) (finding that the government will not suffer any harm where it "will receive precisely what it solicited, and what it still needs").

Rather, the Government will suffer significant harm if injunctive relief is not granted. For example, if Allen is forced to demobilize but later awarded the contract, the Government would suffer significantly disruption due to SNVC initiating its implementation plan and then having to remove its employees. *See*, Exhibit 1, Ludwig Affidavit ¶ 11. In addition, the Government would

incur costs from demobilization if SNVC's contract was terminated after performance began. Further, if injunctive relief is not granted, Allen's indirect rates will be subject to a significant increase. This result would also increase the cost to the Government for Allen's performance under other contracts. *Id.* at ¶ 11. Such a demobilization would also be significantly disruptive to the Government because it would result in the loss of Allen's specially trained employees. *Id.* at ¶ 10. These employees have substantial institutional knowledge, which allows them to quickly address a variety of problems to ensure the security of the soldiers in the field. *Id.* Also, by not having the Contract available to use to train new employees or subcontractors, Allen's ability to ensure that services provided to the Army under other, smaller programs will be diminished, which will reduce the security of the Army personnel that Allen serves. *Id.* at ¶ 9. As a result, the interests of both Allen and the Government will be harmed if SNVC is permitted to begin performance under the Contract. *TRW Envtl. Safety Sys.*, 16 Cl. Ct. at 529 (granting plaintiff's motion for a preliminary injunction because an order maintaining the status quo is appropriate when a serious legal question [as here] is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant"). Thus, it is in the Government's interest not to permit SNVC to begin performance of the contract.

### B. The Potential Harm To SNVC If The Court Enters A Preliminary Injunction Is Minimal At Best

The potential harm to SNVC of injunctive relief being awarded is, at most, minimal. The Court is quite capable of addressing the merits of this action in an expeditious and efficient manner, and consequently, any delay resulting from a preliminary injunction will be short-lived. In addition, SNVC has not begun performance under the Contract. *See* Ex. 1, Ludwig Affidavit ¶12. Because the Contract was only recently awarded, SNVC presumably has not yet incurred any

start-up costs. Furthermore, SNVC received an award it did not deserve, and consequently should not benefit from the Army's improper evaluation. As such, any harm that a delay may cause SNVC is outweighed by the harm to Allen if injunctive relief is denied and is later determined that Allen was unreasonably and improperly denied consideration for the contract award. *See Isratex, Inc. v. United States*, 25 Cl. Ct. 223, 231 (1992).

## V. PRELIMINARY INJUNCTIVE RELIEF IS IN THE PUBLIC INTEREST

The public has substantial interest in maintaining the integrity of the federal procurement process. *See Advanced Sys. Tech., Inc.*, 69 Fed. Cl. at 486. That interest is best served "by allowing the government to proceed with contracts awarded in a manner consistent with fair and open competition, to the contractor offering the best value." *Labat-Anderson Inc. v. United States*, 50 Fed. Cl. 99, 110 (2001). Here, an injunction would serve the public interest because the Army arbitrarily and capriciously evaluated Allen's and SNVC's proposals, failed to follow the RFP's evaluation criteria, did not treat all of the offerors equally and improperly disclosed Allen's proprietary information. *See* supra Part II. As a result, the Agency abused its discretion in evaluating the offerors' proposals, which compromised the procurement process.

"The public interest is manifest in ensuring that the Government closely adhere to the requirements of the procurement regulations." *Overstreet Elec. Co. v.* United *States*, 47 Fed. Cl. 728, 744 (2000). Not only were the Army's evaluations inconsistent with the RFP, but the Army failed to treat the offerors equally, as required under law, by imposing additional requirements on Allen and by disclosing Allen's proprietary information to the other offerors, including SNVC. Furthermore, the public has a long-term interest in ensuring that the contract is made with the offeror that represents the best overall value to the Government. *See Reilly's Wholesale Produce v. United States*, 73 Fed. Cl. at 716. SNVC's lack of relevant experience, inexperienced personnel

and inferior Technical Approach amply demonstrate that the Contract was not awarded to the offeror that represents the best overall value to the Government. Because maintaining or reinstituting the stay of performance will maintain the status quo and not impair services, these public interests are paramount and best served by granting the preliminary injunction. *See PGBA, L.L.C. v. United States*, 57 Fed. Cl. 655, 663 (2003).

## CONCLUSION

For all of the foregoing reasons, Allen respectfully requests that the Court grant its motion for preliminary injunction.

Dated: October 2, 2007

Respectfully submitted,

Ronald K. Henry
KAYE SCHOLER, LLP
901 15th Street, NW
Suite 1100
Washington, DC 20005
Phone: (202) 682-3500
Fax: (202) 682-3580
rhenry@kayescholer.com

*Attorney for Plaintiff Allen Corporation of America, Inc.*

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ALLEN CORPORATION OF AMERICA, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. __________ |

**AFFIDAVIT OF HENRY F. LUDWIG**

I, Henry F. Ludwig, hereby declare as follows:

1. I am Senior Vice President, Logistics Services Division, for Allen Corporation of America, Inc. ("Allen"), a party to the above-captioned matter. My work address is 7801 Redpine Road, Suite J, Richmond, VA 23237 and phone number is (804) 862-7500.

2. The matters herein are true and correct, to the best of my knowledge, and I am available to provide live testimony on these matters, if necessary.

3. I have been in the information technology industry for over 20 years. I have been employed by Allen since 2003.

4. I am intimately aware of the issues relating to the award of a contract (the "Contract") to SNVC, Inc. ("SNVC") for Project Management Logistics Information Systems (PMLIS) with Post Deployment Software Support (PDSS) at Fort Lee, Virginia ("Ft. Lee") under Request for Proposal No. W91QUZ-06-R-0014 ("RFP" or "Solicitation").

5. I am also aware of the harm that will result to Allen if we are not awarded a contract under the solicitation, or if we must demobilize and later are awarded a contract, causing the company to ramp-up for performance after demobilization.

6. Allen is currently the incumbent contractor. Allen has been providing these services to the Army at Ft. Lee for approximately 30 years. If Allen is not awarded the Contract, it will be forced to layoff approximately 40 employees. As a result, Allen will incur various costs and disruption associated with these layoffs.

7. The workers that Allen would be forced to lay off are specially trained to work on the PDSS contract at Ft. Lee and have several years of unique experience on the incumbent contract. The majority of these employees have over eighteen years of specialized experience in providing these services to the Army. Allen's employees would be difficult and expensive to replace.

8. If the preliminary injunction is not granted but the Contract was later awarded to Allen, we would incur additional costs and expend significant effort to re-hire employees. For example, many of Allen's current workers may be unavailable for rehiring. If Allen had to hire new workers, it would take several months or years for those employees to perform at the same level as Allen's current workforce.

9. Allen uses its work on the Contract to demonstrate its skills and experience to prospective customers, and to train employees and subcontractors that work with Allen on other projects. If the preliminary injunction is not granted, Allen would be unable to use its work on the contract for these purposes.

10. If Allen is forced to terminate its work at Ft. Lee, this demobilization would also be disruptive to the Government due to the loss of Allen's specially trained employees who have substantial institutional knowledge in performing the Contract. Allen's ability to rely on its employees' unique skill set enables it to offer the best security to the soldiers in the field.

11. If the preliminary injunction is not granted, the loss of the Contract would have a very significant impact on Allen's indirect rates and cost structure. This would adversely affect both Allen's ability to obtain other contracts and the indirect costs that Allen would have to charge the Government and its other customers.

12. SNVC has not begun performance under the contract.

13. If Allen is forced to demobilize but later awarded the Contract, the Government would also be significantly disrupted from SNVC initiating its implementation plan and then having to remove its employees.

14. For over thirty (30) days, performance of the Contract has been stayed.

15. Allen is ready, willing and able to continue performance at Ft. Lee during the period of any preliminary injunction.

**VERIFICATION**

In accordance with 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Executed on this 1 day of October, 2007.

Henry F. Ludwig
Senior Vice President, Logistics Services Division
Allen Corporation of America, Inc.